IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | )   CIVIL ACTION NO. |
| LARRY A. BAXTER and | )     1:05cv70-T |
| BAXTER & ASSOCIATES | )       (WO) |
| OFFICE OF ACCOUNTANCY, | ) |
| P.C., | ) |
| | ) |
|     Defendants. | ) |

OPINION


The plaintiff, United States of America, has brought
this lawsuit against the defendants, Larry Baxter and Baxter
& Associates Office of Accountancy, P.C., claiming that the
defendants knowingly prepared false income tax returns for
their customers in violation of 26 U.S.C.A. §§ 6694, 6695,
and 6701.  The government seeks an injunction that would bar
the defendants from, among other things, acting as federal-
income-tax-return preparers.  The court's jurisdiction is
proper under 28 U.S.C.A. §§ 1340 and 1345 and 26 U.S.C.A.
§§ 7402, 7407, and 7408.

## I. FINDINGS OF FACT

Larry Baxter is the sole shareholder and president of Baxter & Associates Office of Accountancy, P.C., located in Dothan, Alabama.  Baxter's primary business is to prepare federal and state income tax returns.  Before having their tax returns prepared, Baxter's clients would complete intake sheets that inquired about relevant personal details, dependency or exemption data, and other information pertinent to the preparation of returns.

Because Baxter was not enrolled to file returns electronically, he paid another person $25.00 per return for each return transmitted electronically under that person's name and identification number.

Based upon the evidence presented during a non-jury trial on May 18 and 19, 2005, the court concludes that, over the course of several years, Baxter knowingly and intentionally prepared numerous inaccurate federal income tax returns.  In order to fabricate higher tax refunds, he inflated Schedule C business expenses in order to offset his customers' W-2 income; he falsely reported Schedule A

deductions (including unreimbursed employee expenses and charitable contributions for customers); and he inaccurately calculated his clients' eligibility for the Earned Income Tax Credit (EITC). Baxter had an incentive to generate higher refunds for his clients because he took a percentage of his clients' refunds. These refunds were often deposited directly into Baxter's bank account, and, after having deducted his fees, he would then transfer a portion of the refund to the client.

The testimony of one of Baxter's former clients was not atypical. This customer provided Baxter with her social security number and W-2 forms, and Baxter prepared her 1997 and 1998 State of Alabama and federal tax returns. Although the client worked at a restaurant, Baxter falsely reported on her 1997 Schedule C that she had earned $ 1,850 from "contract sales" and had incurred $ 12,369 in business expenses. The customer later confronted Baxter about the false items on her return, and Baxter accused her of slander.

Another customer testified that, in addition to an inaccurate Schedule C, Baxter falsely reported $ 4,150 in charitable deductions on a Schedule A.  When the customer alerted Baxter to the mistakes, Baxter responded that he had made the necessary corrections.

In other instances, Baxter falsely and without his customers' permission increased their reported income in order to create larger tax refunds after the EITC had been taken into account.  One way in which Baxter falsely reported clients' business profits was by minimizing the business expenses that were reported on his clients' returns.  For example, one client was falsely reported to have made $ 10,000 as a cosmetologist in 2003, without incurring any expenses.  Another taxpayer was falsely reported to have made, expense-free, $ 10,500 from child daycare in 2002.  In other instances, Baxter simply fabricated professions and incomes for clients.

It would appear counterintuitive that falsely reporting increased income would result in a greater refund; such is, however, true with the EITC, which was enacted "to provide

4

relief for low-income families hurt by rising food and energy prices." Sorenson v. Secretary of Treasury of U.S., 475 U.S. 851, 864, 106 S.Ct. 1600, 1609 (1986). The following chart, based on the 2002 tax year, provides an example of how fictitious business profits could be used to increase a tax refund when the EITC is claimed:

| Tax Return Item | Scenario #1: False Business Income Reported on Schedule C | Scenario #2: No False Business Income Reported on Schedule C |
|---|---|---|
| Business Profit | $8,000 | $0 |
| Wages | $3,500 | $3,500 |
| Standard Deduction | ($6,900) | ($6,900) |
| Personal Exemption | ($3,000) | ($3,000) |
| Exemption | ($6,000) | ($6,000) |
| Taxable Income | ($5,900) | ($12,400) |
| Tax Due | $0 | $0 |
| Self-Employment Tax | $1,130 | $0 |
| Tax Owed | $1,130 | $0 |
| EITC | ($4,010) | ($1,410) |
| Refund | $2,880 | $1,410 |

As the above examples suggest, Baxter used a variety of means to obtain money from the government by providing false

information; however, he also took advantage of his clients,

many of whom never reviewed their completed tax returns

prior to filings.  Because the government refunds were often

provided directly to Baxter, it was Baxter who provided the

taxpayers with their refunds, after first deducting whatever

fees he believed that his work warranted.  Many customers

were aware of only the refund they had received from Baxter

and could not state the amount of the total refund received

from the government; and Baxter had charged accounting fees

that were far greater than those of his local competition.

Baxter, therefore, cheated not only the government, but

also his low-income clients, many of whom are now being

pursued by the IRS for back taxes and penalties.  Needless

to say, it is ironic (and sadly so) that Baxter would use

the EITC to cheat the very category of low-income and

vulnerable earners whom the EITC was designed to protect.


## II. CONCLUSIONS OF LAW

Several revenue statutes condemn Baxter's actions and

authorize the relief requested by the United States.   26

U.S.C.A. § 7408 authorizes a district court "to enjoin any person from further engaging in ... conduct ... subject to penalty under section ... 6701."   In turn, 26 U.S.C.A. § 6701 penalizes anyone who knowingly prepares someone else's income tax return to understate tax liability. Section 6701 provides in part that:

> "Any person—
>
> (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
>
> (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
>
> (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person...."

26 U.S.C.A. § 6701(a)(1-3).

   In addition, 26 U.S.C.A. § 7407(b)(1) authorizes the court to enjoin a tax preparer from engaging in conduct subject to penalty under 26 U.S.C.A. § 6694 or 26 U.S.C.A.

7

§ 6695(g).  Section 6694 penalizes the understatement of tax liability by an income-tax-return preparer, and § 6695(g) penalizes return preparers who fail to exercise due diligence in determining eligibility for EITC.

Finally, 26 U.S.C.A. § 7407(b)(2) provides that if an income-tax-return preparer has continually or repeatedly engaged in the conduct described in § 7407(b)(1) and that an injunction prohibiting such conduct would be insufficient, then a court may enjoin such a person from acting as an income-tax-return preparer.

There is no doubt that Baxter meets the following definition of a covered tax preparer: "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed ... or any claim for refund of tax imposed...."  26 U.S.C.A. § 7701(a)(36)(A).   There is also no doubt that his repeated and false reporting on Schedules A and C and his manipulation of the EITC violated 26 U.S.C.A. §§ 6694, 6695(g), 6701.  Baxter repeatedly understated the liability

of his clients and fabricated figures in order to take advantage of the EITC.

Moreover, the fact that Baxter's illegal filings were intended to cheat (that is, steal from) the government and his clients and the fact that the false filings dated back to 1997 and continued over several years, despite customer complaints, warrant the application of § 7407(b)(2), enjoining Baxter from acting as a tax preparer.  Indeed, Baxter constitutes nothing less than a menace to society, in that, in many instances,  he willfully used his position of trust to take advantage of the most vulnerable and needy. See, e.g., Abdo v. United States I.R.S., 234 F.Supp.2d 553, 567 (M.D. N.C. 2002) (permanently enjoining, under 26 U.S.C.A. § 7407(b)(2), a tax preparer who had continually asserted "frivolous and unrealistic positions on numerous tax returns" and who had "caused substantial financial harm to his clients, the United States, and the taxpaying public"); United States v. Savoie, 594 F.Supp. 678 (W.D. La. 1984) (enjoining defendant from serving as tax preparer when he had continually engaged in conduct that violated 26

9

U.S.C.A. § 7407(b)(1) over the course of approximately two years).


## III. CONCLUSION

An appropriate judgment will be entered in accordance with this opinion.

DONE, this the 3rd day of June, 2005.


    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE